Our second case is 17-3150, United States v. Jefferson. Chief Judge Tim Covinch, and may it please the Court. Good morning. Counsel, my name is Dan Hansmeier. I'm with the Kansas Federal Defenders, and I'm here on behalf of the appellant, Davian Jefferson. This case, I think it's fascinating that there's sort of two things going on. One, prosecutorial misconduct. The other, it's a criminal violence issue involving robbery, and I think at this point, when we say those two things, we think, oh no, not this again. But I do want to make clear that I think what we've done in this case is different than what people have been doing in this area, and especially in the 924C context. I think it's different in two ways. The first is the statutory argument we've made under the categorical approach. I don't think anyone's really approached this issue in that way, talking about whether federal robbery actually has an element of force and not just a means of force. And the second way in which we've approached this that's different is that even below, we asked that the element of force prong be submitted to the jury. How do you escape the clutches of Melgar Cabrero? So under the categorical approach, because Melgar Cabrero doesn't address the other argument, I think what I would say is that we're just making, this is an argument that wasn't made there, and I think you can consider it for that reason. And particularly because the question is whether this statute has an element of force, and if we're making an argument that wasn't addressed in that case, I don't see why this court can't address it. That would be my, and I think there's definitely precedent to support that. On the force means, our basic point is this, when you have a list of disjunctives, that's a federal robbery statute, actual use, actual or threatened force, violence, or fear of injury. What the government, and what has been done, is that people have taken this term, fear of injury, and have said it means threatened force. And we're basically saying just statutory interpretation one-on-one, that can't be right, and that can't be right because threatened force is already in the statute. So what you've done, if you take that interpretation and accept it, is that you've created a redundancy. You've read fear of injury out of the statute. Because if it means threatened force, then it means something that Congress has already said. And we know, I mean, I think the case that we cite, Loughran, is really the best case that the Supreme Court has talked about. When you have a list of disjunctives, you can't interpret them to mean the same thing. And that's what has been done so far, and that's what we're asking this Court not to do, and essentially to correct. And if you understand, if that, you know, so the basic endgame with this argument is that once fear of injury becomes something other than threatened force, it is something other than force. And if it's something other than force, and that is a means that robbery can be committed, then robbery categorically does not have an element of force. Let me just ask you a practice hypothetical. Assuming that the government wasn't particularly interested in the force of injury means, and so when it came time to instruct the jury, they simply asked the judge, don't include that, don't include that means, so that there would be only two means over which there is no question about whether or not it's by force. Is that, would that, is there some problem with doing that? I mean, I think that's helpful to us. I think you're absolutely right. It might also be helpful to the government, because in a case like this, unlike a collateral review case where we're looking at enhancing punishment based on something that happened in state court 20 years ago. Okay, so if you're talking about robbery, if we're talking about the federal robbery statute, I think you're exactly right. The federal robbery statute, the 1951 convictions, could have been done on something other than force, absolutely. But I think that if we transition to the 924C counts, then what you've said wouldn't apply, because 924C requires an element of force. Does that make sense? So I think you're right. If the government just wants a conviction on the robbery offenses, they can ask for the lower means and do away with the other stuff. But if they need a conviction on 924C, then it requires an element of force. So they couldn't do that to get the conviction on 924C. Does that make sense? So, and I think that's where we're at here. What we're saying is that this case isn't about the convictions, the underlying robbery convictions. Mr. Jefferson's sentence was 30 of the 32 years is controlled by the 924C counts. So what we want to happen is for one of the 924C counts to go away. Essentially, that's the end game. One 924C count goes away, that's 25 years. So that's really what we're here on is the 924C, and that's why we're arguing categorically robbery has a force means, not a force element. If there aren't any more questions on that, I can move to the alternative argument, and I understand that this would require some work with precedent, but essentially what we did below was ask that this issue be submitted to the jury and not decided by the judge pretrial, and we did that. It's essentially an apprendi argument. We know from Rosemond the Supreme Court said that this portion of 924C is a conduct element. We know from apprendi that any element of an offense, other than the fact of a prior conviction, must be submitted to a jury and proven beyond a reasonable doubt. We know that in this context, we're not dealing with the fact of a prior conviction. So it follows that this is something that should be submitted to the jury, and I think the argument that we made in the district court is very similar to your concurrence in United States v. Cravens, Judge O'Brien, and I know there is some movement on this, and ultimately I don't know if courts will change and go along with what we're saying, but essentially that's the argument, that it's a conduct element and the jury has to find it. Does Melgar close the door on that, though? I don't think so, because that's not the argument that was presented there. I think what, as far, I guess, here's the way I look at it. It's, Melgar Cabrera is precedential in terms of if you apply the categorical approach, but the assumption in Melgar Cabrera was that the categorical approach applies. Now, that assumption is not, this court has never addressed whether that assumption is correct. As far as I know, it's always just assumed so. So I think that this court, without overruling precedent, can address that sort of as an issue of first impression. That's how I see it. And if that's true, you know, here we go. In this case, it's a really, you know, I think what we did below made a lot of sense. You know, we asked for the instruction, we asked the court to instruct the jury to find robbery, to find the specific means. If it found force, then it could convict on 924C. If it didn't, it couldn't. And, you know, to the extent, I mean, I understand that this argument isn't developed yet in terms of court cases on it, and it's something that's sort of brand new for the court. I recognize that, so I don't have a ton of cases to cite. And I don't think the government has a ton of cases to cite the other way. And I really think when you get down to first principles, if you consider first principles, you know, Apprendi, Rosamondi's cases really do bend our way. So if there are no further questions on that, I do want to talk about the prosecutorial misconduct if I have time. Could I ask something about the jury instruction question? Sure. If we end up agreeing that at least one, but not all, of the Hobbs Act convictions should be reversed based on the jury instruction argument you're making, what is the remedy? What should we do if that's where we end up? So you want to, if you affirm two of three? Right. I mean, I guess if you did that, I would think we would get a new trial on the third. Does that make sense? Well, that's what I'm asking. I'm trying to make sense of it. Yeah. If that's how it played out. To me, it seems like an all or nothing thing, that if you're going to send one back for a new trial, you might as well send them all back. Because if you're talking about the same instructional error, I mean, I guess if you think one of is not harmless, I honestly haven't thought of that. And I don't know that I can help you out too much. I would, I mean, my initial reaction is just send them all back, but. Well, we'd be, what I'm saying is we're affirming. Yeah. Yeah, if you did that, then you wouldn't send them back. Right. Yeah. But I would think the one that wasn't affirmed would have to be retried. Right? The best you're hoping for is a retrial on acquittal from this court. Yeah, yes, I think that's absolutely right. We haven't, I don't think we have a basis for a straight out acquittal on anything. On the prosecutorial misconduct, really I think this boils down to, in Kansas City, there's this practice with the prosecutors finding sufficiency of the evidence cases and trying to engraft that language into jury instructions. And this is sort of the prototypical example of it. This is what happened in this case. It happens all the time. And we think it's just wrong. And Judge McGee had said it was wrong initially before trial, and then he went backwards at trial. And really what we're saying is that a case involving sufficiency of evidence is just a different standard. It's a case where this court says we're going to take all of the evidence, view it in the light most favorable to the government, and determine whether it's good enough to pass that super low burden. To say that you take that language and then use it to instruct the jury in the first instance really means that what you're telling the jury, you're essentially instructing the jury under the premise that it's going to view the evidence in the light most favorable to the government. And that's certainly not what should happen. So it really is that simple.  But in this case, the 924C is so important because it adds so much time. And there was evidence about this not being a real gun. It really was vital that the jury determine that issue in the first instance. And we think what the prosecutor did just was very unhelpful. It was not right. It certainly wasn't the law. And it was confusing, and it was done right at the end of trial, and we think it was super prejudicial. And it should require a new trial. And I'll save the remainder of my time. Thank you. The prosecutorial misconduct that you had here sort of pales in comparison to the one we just heard. Would you agree with that? I actually would not agree with that, to be honest with you, because of we had the – I thought the cross-examination on Lloyd Kuhn, the individual who said, after this happened, I thought it was a BB gun, and I thought it was a BB gun because the way it looked. And he testified that he knew guns. I mean, I think that is really strong evidence that there was doubt that these were real guns. And I think what the prosecutor said basically negated that defense. So I think this case is even worse than the one that came before. It seems to me that what he was saying, perhaps inartfully, was that the jury – that the State doesn't have to prove that this was an actual gun that worked, but that there was sufficient evidence from which the jury could infer that. I think maybe in the abstract, but when you look at this case in particular, where the only defense was this could have been a BB gun based on the testimony that this looked like a BB gun, I think that is exactly what the jury would have underserved her comments to be, that there's a possibility that this was a BB gun. The testimony wasn't that. The testimony was, if I recall correctly, that the one witness told the officers at the time that it might have been a BB gun. But then when he actually testified, he said, no, it wasn't a BB gun because a BB gun has a really small, like, eight-inch thing. This was either a nine-millimeter minimum or a .45. I mean, that's exactly right. Based upon the size of the bore. And that's exactly right. But that is testimony that is contradictory. I mean, essentially his testimony, what he thought and what he said right after the robbery is beneficial to us. And what he decides to say two years later as a government witness is beneficial to the government. Now, the jury can believe either one of those. We're not saying that it can't. All we're saying is that the jury shouldn't have been told that it couldn't accept, that the possibility that it was fake isn't a reason to acquit because it most certainly is. And it is in the context of a witness who made a statement that it wasn't a real gun. That's, we're essentially saying that there was, I'm way over time. I'm sorry. Go ahead and finish. Okay. I'm just repeating myself. I think I've answered the question. I'll give you some rebuttal too. Okay. Ms. Capwell. May it please the Court. My name is Carrie Capwell. I represent the government on this appeal. And I guess I'll start where opposing counsel left off on the issue of whether there was misconduct or not during the closing argument. And here there was no improper statement. The prosecutor did not make this point in her first summation. She made it in her rebuttal as a direct response to an argument that defense counsel made and injected. So defense counsel raised this argument that unless you have, it really came down to a you just never know. Unless you have ballistics, unless you actually have the firearm, unless you have evidence of holes in a wall, you really can't trust the appearance of a weapon. And then defense counsel injected this incident from New York where a 12-year-old boy was shot by a police officer. And clearly the argument was you just can never trust appearances. You actually need to have the weapon in evidence or tested. And that is what the AUSA was responding to, this argument that there could be this theoretical possibility that if you don't have the gun here as evidence, then you just can never, ever convict on a 924C without the weapon and evidence. And that's what the response was here. It was a response to the argument you just never know. And it was consistent with what the judge had instructed the jury in the reasonable doubt instruction. And that instruction, as opposing counsel concedes in his brief, was follow this court's pattern instruction on reasonable doubt. And he concedes that that was a correct instruction. And there the court instructed the jury as part of that lengthy instruction that the law does not require proof that overcomes every possible doubt. And that is what the prosecutor was trying to convey there. That it's a reasonable doubt that the government has to overcome, but not every theoretical possible doubt. And if you look at what happens right after the objection and the sidebar is the prosecutor then immediately restates the burden of proof. The government has the burden to prove the defendant guilty on every element beyond a reasonable doubt, including that this is an actual firearm. So the prosecutor does not shy away from her burden. She actually embraces her burden. And then she makes clear to the jury, we're talking about theoretical possibilities, and the government doesn't have to dispute a theoretical possibility. It's just reasonable doubt here. So I think that is what the prosecutor was responding to. And when viewed in context, there was no improper statement made here. And even if there was, which there wasn't, we have the harmless error beyond a reasonable doubt argument. And here, looking at the court's instructions, they are very clear to the jury from the get-go that you are to follow the instructions that I give you and only the instructions that I give you, not whatever the attorneys say. So those instructions, as well as the burden of proof instruction, worked here as a safeguard to ensure that this defendant got a fair trial. I also want to point out that the court's instructions, the bulk of the instructions were given before the closing argument, but then after the rebuttal summation and right before the jury went to deliberate, the district court judge gave another short instruction, which again included the burden of proof and again included the fact that you are to follow my instructions and only my instructions. And as this court has stated in a number of decisions, that there was a presumption that the jury does follow the court's instructions unless there's overwhelming evidence to the contrary, which there is not in this case. So if there are no questions on that issue, I will move on to some of the other issues involving crime of violence and Hobbs Act robbery. And here, given this court's recent decision in Melgar-Cabrera and also given this court's decision in Morgan from 2014, I think those two cases together do foreclose all the arguments that opposing counsel makes here. So that in Melgar-Cabrera, this court found categorically 924C3A requires violent force. Hobbs Act robbery requires violent force. They're a categorical match so that as a question of law, as a matter of law, Hobbs Act robbery is a crime of violence. Well, how do you respond to counsel's argument that the taking property by means of fear of injury, that in Melgar-Cabrera the question of whether that satisfies crime of violence, that wasn't really presented, that wasn't argued. And so it's still open to this panel to look at that. I disagree with that argument. I think two main points. One is this court is very, very familiar through dozens of opinions that it has authored about the categorical approach, the modified categorical approach, when a statute's divisible, when it's indivisible. These are not issues that are foreign to this court. And Melgar, even though Melgar-Cabrera, excuse me, may not have dealt specifically with the means issue that the defendant raises here, it's clear in its holding that it has rejected that argument and that it has found that Hobbs Act robbery is a crime of violence under 924C3A. You're saying across the board? Across the board. And then I also want to point out, and I think this could be helpful, I have to admit I haven't really fully developed and explored this argument, but this court's case in Harris, which is another fairly recent case there involving Colorado robbery, and I do note there, I believe it's in footnote 2, this court does note, and there the court found that that Colorado robbery statute categorically was a crime of violence, used the categorical approach for purposes of 924C3A, but there it said that the Colorado statute sets forth alternative means for satisfying the statute's conduct element, for example, force, threats, or intimidation. The statute is indivisible, and we apply the categorical approach under Mathis. So I think that might also support an argument opposing defense counsel's argument that here we have means, and so then we would apply a modified categorical approach or a different approach. I think if we look at Harris and if it's analogous, I think we can use that to say, no, that forecloses that argument as well. And I mentioned the Morgan case, which states that it's very well settled that whether a crime fits the definition of a crime of violence for 924C is a matter of law, and so that would be an issue that the district court judge would instruct the jury on. It's not an issue that would be given to the jury as finders of fact to decide, and that's well settled. So unless there's en banc reconsideration of both Morgan and Milgar Cabrera or intervening in Supreme Court law, which would contradict or invalidate this Court's cases, then this Court is bound to follow those cases. Unless the Court has any other questions, I will submit my argument. Well, we still have a few issues to go here. Okay. You argue in your brief that any error that was made on the Hobbs Act jury instruction was harmless, but I wasn't sure whether you were saying or conceding that there was error. So where are you on that? Well, Your Honor was very perceptive on that point. You know, I think we have a strong argument on the harmlessness, so that's what I wanted to focus on. You know, I agreed in the brief that under Thomas, Thomas says that Hobbs Act robbery requires violent force. That is an element. Now Milgar Cabrera has made that clear. So, I mean, I'm constrained to agree that the jury has to be instructed under Hobbs Act robbery that they must find that violent force was used. All right. Well, if we get to harmlessness, is the test for assuming error, is it, must it be harmless beyond a reasonable doubt? Yes, Your Honor. All right. And then we get to the different counts, and it seems like, especially on count two, I've been watching that video, and I'm just wondering why it is harmless beyond a reasonable doubt on that one, where you've got the pulling the door, where's the violent force beyond a reasonable doubt? Yes, Your Honor, I understand. And I think the 28-J letter that I filed, the second one I filed discussing United States v. Garcia, I think that helps us a lot there because it talks about force, resisting force, overcoming resistance. And I also was watching the video right before coming to argument again, and I think you can see, I mean, the video really does support that a lot of force is being used on both sides. Well, but with Garcia, you've got them yanking a purse out of a moving car, and here it's just holding the door shut. Right, but it can be indirect force. Well, it can be. Right. But, again, we're beyond a reasonable doubt. I understand, Your Honor, but I think here you can tell, I mean, the men aren't just kind of holding onto the door and not doing anything. They are using all of their strength. You can see the clerk's entire body is leaning back, so he's holding the door. He is using all of the strength in his body to keep these two men out of his store because obviously he's fearful of what's going to happen to him, and he's fearful that they're going to steal the money drawer that they just dropped. And you can see also in the video that on the other side, I mean, it's harder to see because of the doors, but you know they are yanking that door, the two men, as hard as they can to quickly get back in that store and pick up that cash drawer that they dropped. So it's clearly a struggle over property, so it clearly falls under the statute. And they're using all, the two men on one side and then the clerk on the one side, they're using all of their strength. And it's clear that the robbers here overcome the resistance of the clerk. And so that force that's being exerted, to me it seems uncontroverted and overwhelming, that that is a force that is capable of inflicting pain and injury as the definition in Johnson 1. And also in Garcia, which talks about a victim clinging to her property and then it being yanked away from her. And then we have the concurrence by Judge Scalia. I'm looking for my notes, but that was helpful, too, because it talks, I think, about hitting, slapping, shoving, grabbing, pinching, biting, hair-pulling from Castleman. And I think pinching can fall under violent force. All of this force that was being exerted by the men over the door, where they're using all of their strength in their body, I mean, has to be more than pinching. And a slap in the face under Johnson 1, in this court's Harris case, is sufficient. So it seems to me that the force that's being exerted in that video is uncontroverted evidence that that meets the requirement for violent force. And so that's why I would say all of the Hobbs Act robbery convictions should be affirmed, even if there was instructional error because there was no violent force definition. So I would ask this Court to affirm all of the convictions in this case. Thank you, Counsel. Thank you very much. Could you give Mr. Hansmeier two minutes, please? Thank you. Just on, I know the government cited Harris. So Harris, there was no means that was not forced. I think she just read force or intimidation. And we know that force, that courts have interpreted intimidation as threatened force. So to say that that indivisible statute didn't have this sort of argument is just to beg the question whether a statute that has this sort of force or fear of injury is still under a categorical approach, a crime of violence. So I don't think Harris gets you anywhere. I think divisibility and indivisibility, you can get confused with that. I don't think that's helpful in this case. Because if a statute is indivisible, there are means. The question is whether one of the means is not force. And if one of the means is not force, then the indivisible statute does not have an element of force. That's the basic argument. And, you know, I don't, the government wants to pump the issue and say that this court is bound by a decision that doesn't address it. And I just don't get that. The fact that some attorney who represented Malgar Cabrera didn't make the argument doesn't mean that Mr. Jefferson, who preserved the argument below, shouldn't get his day in court. I mean, at the end of the day, we made this argument below. We shouldn't be at a disadvantage because some other attorney came before us and didn't make it. I mean, Mr. Jefferson is serving, you know, 30 years in prison on these 924C counts, and we think we have a strong argument that he shouldn't be. And the thought that this court wouldn't address those arguments because some other case came down that didn't address the arguments doesn't just sit well. So we'd ask this court to address the arguments, take them as they come, and hopefully agree with us, reverse the 924C convictions and whatever else, and send this case back for a new trial. Thank you. Thank you. Counsel, appreciate your arguments. You're excused, and the case shall be submitted. We'll take a short break before our next argument.